United States District Court
Southern District of Texas
**ENTERED**
July 07, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HERON LAKES 2005 HQ-7, LLC, § § Plaintiff, § § VS. § CIVIL ACTION NO. 4:22-CV-04389 § CADENCE BANK SUCCESSOR BY § MERGER TO BANCORPSOUTH § BANK, § § Defendant. | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Pending before the Court is the defendant's, Cadence Bank successor by merger to BancorpSouth Bank ("the Bank"), motion for judgment on the pleadings (Dkt. No. 3). The plaintiff, Heron Lakes 2005 HQ-7, LLC ("Heron Lakes"), has filed a response to the defendant's motion (Dkt. No. 17), and the defendant has filed a reply (Dkt. No. 19). After reviewing the motion, the pleadings, the record, and the applicable law, the Court determines that the defendant's motion should be **GRANTED**.

### II. FACTUAL BACKGROUND

This dispute centers on the effect of a non-judicial foreclosure upon lease agreements. In 2015, the Bank's predecessor entered into separate, 11-year leases for four properties with L Reit, Ltd. This case involves only three of those leased

1

properties ("the Properties"): two at 10740 N. Gessner Road, and one at 7908 N. Sam Houston Parkway West.

In 2019, Heron Lakes became the noteholder of a promissory note executed by L Reit in 2014. The accompanying deed of trust, with its assignments and liens, was also assigned to Heron Lakes as part of the 2019 transfer. In 2020, Heron Lakes foreclosed the deed of trust, sparking the non-judicial foreclosure sale by the Bank. Heron Lakes purchased the three properties at the sale through the trustee's deed and bill of sale. After the foreclosure sale, Heron Lakes' agent sent monthly rent statements to the Bank. The Bank did not pay. Instead, it abandoned the Properties. The Bank told Heron Lakes that the leases were terminated by the foreclosure sale, and that the Bank was therefore free to abandon the Properties. The Bank chose to remain at a fourth property that is not a part of this lawsuit. In January of 2022, Heron Lakes sent the Bank notices of default. When the Bank refused to comply with the default statements, Heron Lakes filed this lawsuit, claiming breach of contract.

## III. CONTENTIONS OF THE PARTIES

The Bank argues that judgment on the pleadings is appropriate because there are no disputed material facts and the pleadings and attachments are all that the Court needs to render judgment. The Bank further asserts that judgment should be rendered in its favor because Heron Lakes' foreclosure of the Properties terminated the Bank's leases with L Reit and any successors, including Heron Lakes. The Bank argues that Heron Lakes could have avoided this termination by subordinating its deed of trust lien to the leases according to Subordination Clause of Section 13.01 of

the lease agreements. But because Heron Lakes did not follow the subordination procedure laid out in 13.01, the foreclosure terminated the leases, leaving the Bank free to leave the Properties.

Heron Lakes counters that the motion for judgment on the pleadings is premature because material facts remain in dispute—specifically, the parties' intent concerning termination and attornment. Heron Lakes also resists the Bank's interpretation of Section 13.01's effect on a lease termination, arguing that the Attornment Clause of Section 13.02 and the Successors Clause of Section 17.20 are the relevant provisions. Finally, Heron Lakes argues that because it did not have a mortgage that could be subordinated to the lease agreements at the time of foreclosure, the Subordination Clause of Section 13.01 is inoperative.

## IV. STANDARD OF REVIEW

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)). Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Under the demanding standards of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if the "[f]actual allegations [are not] enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court's review is limited to the allegations in the complaint and any documents that are attached to a defendant's motion to dismiss, referred to in the complaint, and central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

V.   **ANALYSIS & DISCUSSION**

   A. *Judicial Notice*

The Bank seeks judicial notice of certain publicly recorded documents including the lease agreements, the trustee's deed, the deed of trust, the assignment, and a notice from the Securities and Exchange Commission regarding Cadence Bank's merger with BancorpSouth. Heron Lakes has consented to this request. "The court . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Because these documents are public records and their accuracy cannot reasonably be questioned, the Court takes judicial notice of them.

Having taken judicial notice of the public documents, the Court may properly consider these documents when deciding the instant motion. "[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 (5th Cir. 2007) n.9; *see Mitchem v. Fed. Nat. Mortg. Ass'n*, 571 F. App'x 298 (5th Cir. 2014) (approving a court's taking judicial notice of matters of public record in a 12(b)(6) analysis).

4

*B. The Motion Is Not Premature*

Heron Lakes insists that discovery is critical because significant issues of fact persist. First, Heron Lakes points to the Bank's continued performance under the fourth lease, which is nearly identical to those at issue in this case. Heron Lakes argues that the Bank's different treatment of this lease indicates a factual dispute regarding the parties' intentions as it relates to subordination, attornment, and successorship. Second, Heron Lakes asserts that its original petition "specifically alleges, among other things, that it factually became the successor landlord and assignee to the Leases pursuant to the Leases' terms," which the Bank denies. Third, Heron Lakes complains that information regarding negotiations surrounding the leases has not been exchanged. Finally, Heron Lakes faults the Bank for "not rely[ing] upon any of the Parties' negotiations concerning the Leases, the applicable clauses discussed [therein], or any drafts of the Leases."

None of these arguments reveal an issue of disputed fact. First, to quote Heron Lakes' petition, the fourth lease "is not at issue in this lawsuit." Second, the Bank's different choices regarding different properties that are not part of the case are not relevant to the parties' intent regarding the leases at hand, especially given that the lease agreements are unambiguous. The Bank's choices, at best, may simply reflect strategic behavior, especially since Texas law permits tenancy at will.[1] Hence, details regarding this fourth lease are not necessary to decide this motion.

---

[1] "If the tenant remains in possession and continues to pay rent, and the landlord, having knowledge of the tenant's possession, continues to accept the rent without objection to the continued possession, the tenant is a tenant at will, and the terms of the prior lease will continue to govern the new

5

Heron Lakes' argument that disagreement over its successor landlord and assignee status presents a factual issue fares no better. These are legal, not factual questions. Finally, information regarding negotiations and earlier drafts of the leases is not germane; the parties have an unambiguous contract that the Court is capable of interpreting without recourse to ancillary documents. "When the parties disagree over the meaning of an unambiguous contract, the court must determine the parties' intent by examining the entire writing . . . The parties' intent must be taken from the agreement itself and the agreement must be enforced as written." *Wells Fargo Bank, Minnesota, N.A. v. N. Cent. Plaza I, L.L.P.*, 194 S.W.3d 723, 726 (Tex. App. 2006). Heron Lakes has not argued that the lease agreements are ambiguous. Accordingly, the Bank's lack of reliance upon negotiations and earlier drafts of the lease is hardly a defect.

C. *Heron Lakes' Foreclosure Terminated the Leases*

"Generally, a valid foreclosure of an owner's interest in property terminates any agreement through which the owner has leased the property to another . . . This is particularly true when, as here, the lease agreement is expressly subordinate to a mortgage or deed of trust affecting the leased premises." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 915 (Tex. 2013) (citations omitted).

---

arrangement absent an agreement to the contrary." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 916 (Tex. 2013).
The Court does not opine that such an agreement characterizes the fourth lease. The Court expresses no opinion at all regarding the fourth lease; the Court mentions tenancy at will only to respond to Heron Lakes' argument that the fourth lease necessarily presents a factual dispute regarding the three leases before the Court.

Here, the Subordination Clause subordinates the leases to the deed of trust. The clause states:

> **13.01 SUBORDINATION.** *This Lease is and shall be subject and subordinate to any and all ground or similar leases affecting the Project, all mortgages which may now or hereafter encumber or affect the Project* and to all renewals, modifications, consolidations, replacements and extensions of any such leases and/or mortgages; provided, however, that *at the option of any Underlying Party (hereinafter defined), this lease shall be superior to the lease or mortgage of such Underlying Party*. The provisions of this Section 13.01 shall be self-operative and shall require no further consent or agreement requested by any such lessor or mortgagee in connection with this Section 13.01. Tenant shall, however, execute promptly any appropriate certificate or instrument that Landlord may request. Tenant hereby irrevocably appoints Landlord as Tenant's attorney-in-fact to execute the same. As used in this Lease, the term "Underlying Party" shall mean the holder of the lessor's interest under any ground or similar lease of all or part of the Building and/or the mortgagee or purchaser at foreclosure with respect to any mortgage of all or part of the Building. Tenant agrees that any Underlying Party may unilaterally subordinate its mortgage or lease to this Lease at any time by filing a notice of such subordination in the Official Public Records of Real Property of the county where the Building is located. (Emphasis added).

In 2019, Heron Lakes became the assignee of the deed of trust. "Generally, a deed of trust is a mortgage with a power to sell on default." *Starcrest Trust v. Berry*, 926 S.W.2d 343, 351 (Tex. App. 3d 1996); "There is no difference, in legal effect, between a mortgage with a power of sale and a deed of trust, executed to secure a debt, where the power of sale is placed in a third person." § 11:1. Introduction to Drafting Mortgage Notes and Deeds of Trust, 11 Tex. Prac., Texas Methods of Practice § 11:1 (3d ed.). Because Texas law characterizes a deed of trust as a mortgage, Herons Lakes' deed of trust is a mortgage. Indeed, it is only through the deed of trust that Heron Lakes came to foreclose and purchase the Properties. Although Heron Lakes argues that it did not own a mortgage, it does not dispute the

7

judicially-noticed deed of trust recorded in the Harris County Clerk's office. Texas law's classification of this deed of trust as a mortgage is not a factual question that the Court must assume in the plaintiff's favor. As a legal matter, Heron Lake's deed of trust is a mortgage.

Consequently, the Subordination Clause subordinates the leases to the deed of trust. Therefore, *Coinmach*'s general rule that foreclosure terminates lease agreements is "particularly true" in this case. *Coinmach*, 417 S.W.3d at 915. Because the foreclosure terminated the leases, the Bank was free to remain as a tenant at will—pending Heron Lake's consent—or abandon the property. *Id.* at 916. In other words, either party could choose to keep or abandon the current arrangement.

Heron Lakes asserts that this interpretation of the Subordination Clause is misguided because it strips Heron Lakes of the rent payments of its collateral; it is implausible, Heron Lakes argues, that the parties intended to diminish the value of the collateral in this way. But the Subordination Clause does not diminish the value of the collateral. Rather, it gives the assignee/mortgagee the option to force the tenant to remain in the lease agreement after foreclosure. After foreclosure, the parties may create a tenancy at will through the consent of both parties, manifested by their conduct. *Coinmach* at 916. By subordinating the deed of trust to the leases, the assignee/mortgagee could preserve the lease agreements even after foreclosure. "Foreclosure does not terminate interests in the foreclosed real estate that are senior to the mortgage being foreclosed." *Williams v. Nationstar Mortg., LLC*, 349 S.W.3d 90, 95 (Tex. App. 2011). Therefore, the Subordination Clause allows the

8

assignee/mortgagee to choose for the tenant whether to remain in the lease. This gives the assignee/mortgagee the option to retain above-market leases or reject below-market leases. This is valuable flexibility, and it is not implausible that the parties bargained for it. Indeed, this analysis shows that Heron Lakes could have forced the Bank to remain in its lease agreement by providing the notice laid out in the Subordination Clause. Because Heron Lakes does not allege that it did, the Bank's choice to abandon the property was preserved, as no lease agreement existed after foreclosure.

Nonetheless, Heron Lakes argues that the Attornment and Successorship Clauses, rather than the Subordination Clause, should guide the Court's analysis. These clauses state:

> **13.02 ATTORNMENT**. In the event of the termination of any ground or similar lease affecting the Project or the enforcement by the trustee or the beneficiary under any mortgage or deed of trust of remedies provided by law or by such mortgage or deed of trust, Tenant will, upon request of any person or party succeeding to the interest of Landlord as the result of such termination or enforcement, automatically become the Tenant of such successor in interest without change in the terms or other provisions of this Lease; provided, however, that such successor in interest shall not be bound by (a) any payment of Rent for more than one month in advance. Upon request by any such successor in interest, Tenant shall execute and deliver an instrument or instruments confirming the attornment provided for herein.
>
> **17.20 SUCCESSORS**. Subject to the limitations and conditions set forth elsewhere herein, this Lease shall bind and inure to the benefit of the respective heirs, legal representatives, successors, and assigns of the parties hereto. All rights, powers, privileges, immunities, and duties of Landlord under this Lease, including, but not limited to, any notices required or permitted to be delivered by Landlord to Tenant hereunder, may, at Landlord's option, be exercised or performed by Landlord's agent or attorney.

9

The problem for Heron Lakes is that these clauses assume a "party succeeding to the interest of Landlord." But no such party exists because no lease agreements survived foreclosure. This reading does not gut the Attornment and Successors Clauses. The way to trigger the Attornment Clause, 13.02, is to follow the notice provision laid out in the Subordination Clause, 13.01. The structure of the contract mirrors real life; the Subordination Clause immediately precedes the Attornment Clause in the contract, just as it would in real life operation. In other words, the Attornment and Successor Clauses lay out what happens after the Subordination Clause is invoked. This reading gives meaning to all three relevant provisions of the contract, while harmonizing with the legal effect of foreclosure announced in *Coinmach*.

Finally, Heron Lakes argues that the Attornment and Successor Clauses control because they detail what should happen in the event of termination. Heron Lakes cites *Coinmach*'s statement that "[a] lease agreement may provide that its terms continue to apply to a holdover tenant." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 916 (Tex. 2013). First, this case does not involve a holdover tenant; quite the opposite. Second, it is important to note that the *Coinmach* court cites to *ICM Mortg. Corp. v. Jacob*, which construed the word "continue" in this context as a *new* landlord-tenant relationship under the same terms of the old lease, rather than the preservation of the relationship under the earlier lease. *ICM Mortg. Corp. v. Jacob*, 902 S.W.2d 527, 531-533 (Tex. App. 1994), *writ denied* (Aug. 1, 1995).

"Continue," then, does not imply an exception to the general rule that foreclosure terminates subordinate leases. *Coinmach*, 417 S.W.3d, 917.

## VI.   CONCLUSION

The Court concludes that there is no set of facts consistent with the pleadings and the judicially-noticed facts that entitles Heron Lakes to relief. Because Heron Lakes' foreclosure terminated the leases, no agreement remained for the Bank to breach. Accordingly, the defendant's motion for judgment on the pleadings is hereby **GRANTED**.

IT IS SO **ORDERED**.

SIGNED on July 7, 2023, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge